**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

LORI HAFLEY, as Special )
Administrator of the estate )
of ROBERT MCFADIN )
  )
    Plaintiff, )
  )
v. )
  )    No. 06-1254
THE CITY OF SPRING VALLEY, )
OFFICER THOMAS QUARTUCCI, )
and POLICE CHIEF DOUG )
BERNABEI )
  )
    Defendants. )

### O P I N I O N   A N D   O R D E R

Before the Court is Defendants' Motion to Dismiss [Doc. 4] and accompanying Memorandum [Doc. 7]. Plaintiff has filed a Response to Defendants' Motion. [Doc. 9, Ex. 1.]

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. The Court orders briefing on an additional matter.

### I.
### BACKGROUND

This lawsuit stems from the arrest and subsequent suicide of Robert McFadin on April 23, 2005 while he was a pre-trial detainee at the Spring Valley Police Department ("Spring Valley PD"). (Compl. ¶ 43.) Plaintiff's Complaint [Doc. 1] alleges the following facts:

Mr. McFadin ("Decedent") was married to Randi McFadin and the couple had one child together. (Compl. ¶ 9.) The marriage appears to have been a turbulent one. So turbulant that Ms. McFadin obtained an Order of Protection against her husband. (Compl. ¶ 13.)

At some point prior to Decedent's suicide, Ms. McFadin took Decedent's Ford Explorer against his wishes. (Compl. ¶ 14.) Decedent responded by making a number of threatening telephone calls to his estranged wife. (Compl. ¶ 11.) On the morning of April 23, Decedent learned that Ms. McFadin was at a McDonald's restaurant in Spring Valley with his Ford Explorer. (Compl. ¶ 15-17.) He went to the McDonald's and was able to retake his Explorer from his estranged wife.

Decedent then called the Spring Valley PD and explained to Dispatcher Patricia Sment why he took back the vehicle. (Compl. ¶ 18.) Shortly after that, Ms. McFadin went to the police station herself and reported the Explorer missing. (Compl. ¶ 19.) Officer Thomas Quartucci then called Decedent and requested that he come down to the police station to give a statement regarding the vehicle. (Compl. ¶ 22.)

Around noon, Decedent voluntarily went to the police station and Officer Quartucci placed him under arrest for violating the Order of Protection. (Compl. ¶ 25.) Officer Quartucci escorted Decedent uncuffed from the dispatch room to

Cell #1 while the department processed him for transport to the Bureau County Jail. (Compl. ¶ 26.)

While in the holding cell, Officer Quartucci checked on Decedent at 12:15 and 12:30. (Compl. ¶ 28.) Around 12:30 P.M., Ms. McFadin returned to the police station. (Compl. ¶ 31.) Officer Quartucci and Dispatcher Patricia Sment both noticed that Ms. McFadin's presence was causing the Decedent to act erratically. Furthermore, Officer Quartucci noticed a few drops of blood on Decedent's left wrist and believed the Decedent was attempting to harm himself by damaging his wrists. (Compl. ¶ 34-35.) After noticing that Decedent was attempting to harm himself, Officer Quartucci entered Decedent's cell to place him in handcuffs. (Compl. ¶ 36.) When Quartucci entered the cell, he entered with his firearm. (Compl. ¶ 30; Compl. ¶ 37-38.) This was a violation of Spring Valley PD's standard operating procedure.[1]

Once inside the cell, a struggle erupted between Quartucci and Decedent. (Compl. ¶ 39.) During the struggle, Decedent was able to wrestle away Quartucci's firearm and escaped the holding cell. (Compl. ¶ 40.) Officer Quartucci, Dispatcher Sment and Ms. McFadin managed to flee the police department unharmed. (Compl. ¶ 41.) However, after they fled, Decedent took

---

[1] Standard operating procedure of the Spring Valley Police Department required officers to secure their weapons before entering the cell area. (Compl. at 5)

Quartucci's firearm, placed it under his chin, and committed suicide.  (Compl. ¶ 43.)

Plaintiff is the mother of Decedent and she has brought suit against the City of Spring Valley ("Spring Valley"), Officer Quartucci, and Police Chief Doug Bernabei under 42 U.S.C. § 1983, the Illinois Wrongful Death Act and the Illinois Survival Act.  Counts I, III, and V of her claim allege constitutional violations by Spring Valley, Officer Quartucci, and Police Chief Bernabei, respectively.  Counts II, IV, and VI contain claims under the Illinois Wrongful Death Act against the same Defendants.  Defendants now seek to have Plaintiff's claims dismissed under Federal Rule of Civil Procedure 12(b)(6).

According to Defendants, Plaintiff has also filed a suit in state court under the Illinois Wrongful Death Act.  <u>Hafley v. City of Spring Valley</u>, 2006 L 000013 D 001 (Bureau County, Ill. filed March 31, 2006).  This Court has taken judicial notice of the state court record and notes that Defendants have also moved to dismiss Plaintiff's claims in state court.  In the state court proceeding, the court recently granted in part and denied in part a motion to dismiss allowing certain claims to proceed.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be

granted under any set of facts that could possibly be proved consistent with the allegations. Fed. R. Civ. P. 12(b)(6); Hishon v. King & Spalding, 467 U.S. 69, 72 (1984). If it is possible to hypothesize any set of facts consistent with the complaint that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) would be inappropriate. Sanville v. McCaughtry, 266 F.3d 724, 732 (7th Cir. 2001). In ruling on a 12(b)(6) motion, a court must accept the well-pleaded allegations of the complaint as true and view them in the light most favorable to the plaintiff. Gomez v. Ill. Bd. of Educ., 811 F.2d 1030, 1038 (7th Cir. 1987). However, a court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. Coates v. Ill. Bd. of Educ., 559 F.2d 445, 446 (7th Cir. 1977).

A motion to dismiss tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle her to relief. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). To survive a motion to dismiss, "complaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule." Kolupa v. Roselle Park Dist., 438 F.3d 713, 715 (7th Cir. 2006).

## III.
## ANALYSIS

**A. Constitutional Claims**

A pretrial detainee has a constitutional right to due process under the Fourteenth Amendment.  U.S. Const. amend. XIV. Prisoners who have been convicted are entitled to a right to be free from a prison official's "deliberate indifference" to a serious harm or medical need.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Fourteenth Amendment extends that same right to pretrial detainees.  Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005).

The requisite constitutional showing Plaintiff must make is a showing of "deliberate indifference" by State officials to basic needs.  Deliberate indifference is more than negligence. Johnson v. Snyder, 444 F.3d 579, 585 (7th Cir. 2006).  See also Farmer v. Brennan, 511 U.S. 825, 837 (1994)(official must act in an intentional or criminally reckless manner).  A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind.  Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007).  To establish deliberate indifference, a plaintiff must show that: (1) she suffered from an objectively serious medical condition or need, and (2) prison officials subjectively knew of and disregarded her needs.  Farmer, 511 U.S. at 834; Palmer v. Marion County, 327

F.3d 588, 594 (7th Cir. 2003). There is no dispute that the risk of suicide is an objectively serious risk of harm. Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006). However, the issue in this case is whether the facts alleged by Plaintiff satisfy the subjective component of a deliberate indifference claim.

The subjective component of a deliberate indifference claim requires that the official knew of a substantial risk of harm to the inmate and disregarded the risk. Edwards, 478 F.3d at 831. Where the harm at issue is a suicide, a claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide, and (2) intentionally disregarded the risk." Collins, 462 F.3d at 761.

Plaintiff alleges that Officer Quartucci was deliberately indifferent to Decedent's serious medical needs and subjectively knew that Decedent was at a substantial risk of committing suicide. Specifically, Plaintiff states in her Complaint that Quartucci saw that Decedent was attempting to harm his wrists and was behaving erratically.

Observing someone harming themselves and behaving erratically is different than being aware that they are a suicide risk. "[S]trange behavior alone, without indications that that behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge

7

of a high suicide risk to jail personnel." Cavalieri v. Shepard, 321 F.3d 616 (7th Cir. 2003). Nevertheless, discovery could reveal that Decedent's behavior was not just generally unusual but specifically erratic to the point of clearly indicating that Decedent was a suicide risk. For example, discovery could reveal that Decedent was talking about suicide, behaving in a way that clearly indicated he was about to commit suicide and was not just attempting to harm his wrist, but attempting to slice his wrist to commit suicide. These are reasonable inferences that could be drawn from Plaintiff's Complaint. If this is the case, then Quartucci may have been cognizant of the significant risk that Decedent would imminently seek to take his own life.

Next, Plaintiff must show that Quartucci intentionally disregarded that risk. Collins, 462 F.3d at 761. Plaintiff does not need to show that Quartucci engaged in the intentional infliction of harm. Id. at 762. Instead, Plaintiff must demonstrate "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." Collins, 462 F.3d at 762, citing Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992).

Here again, whether Quartucci showed total disregard to the risk at hand depends upon the degree of Decedent's erratic behavior. Officer Quartucci did not just hand Decedent the gun.

8

Instead, discovery will likely reveal that Decedent physically assaulted Quartucci and took his firearm from him. Being aware that Decedent was a suicide risk is different than being aware that Decedent would assault a police officer and take a firearm. The question then is, was Decedent's behavior so erratic that Quartucci intentionally disregarded the risk of an assault?

Again, discovery could reveal that Decedent was pacing his cell, throwing things, yelling, threatening Quartucci and generally behaving so erratically that Quartucci was aware that Decedent was ready to assault a police officer. If that is the case, then entering the cell with a firearm may show an intentional disregard for the risk of assault and suicide. Since this Court can reasonably infer these facts from Plaintiff's Complaint, Plaintiff could demonstrate that Officer Quartucci was deliberately indifferent to Decedents serious medical need. Accordingly, Plaintiff has pled a *prima facie* claim of deliberate indifference against Officer Quartucci.

For Plaintiff's § 1983 claim to continue against the City of Spring Valley, Plaintiff must meet a different standard for municipal liability. Under § 1983, a government agency cannot be liable for the acts of its employees under the theory of respondeat superior. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) ("municipality cannot be held liable solely because it employs a tortfeasor"). To establish liability, a

9

Plaintiff must show that (1) the Decedent suffered a deprivation of a federal right, (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that (3) proximately caused his constitutional injury.  *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005).  More specifically, unconstitutional policies or customs include: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that a person with final policymaking authority caused the constitutional injury.  *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006).

There is no dispute that Officer Quartucci is the person who caused the alleged constitutional injury.  And, Plaintiff argues that discovery will reveal that Quartucci had policy making authority.  (Doc 9, Ex 1 at 6.)  This Court is unaware of the internal policy making procedures within the City of Spring Valley.  Likewise, Plaintiff is not required to spell them out in her Complaint.  Accordingly, discovery is necessary to determine if indeed Quartucci did have final policymaking

authority. Until then, Plaintiff has adequately pled a claim of municipal liability against Spring Valley.[2]

Finally, Plaintiff seeks to bring a claim against Police Chief Bernabei in Count V of her Complaint.  As previously noted, under § 1983 an employer like Chief Bernabei cannot be held liable for the acts of his employees on a theory of respondeat superior.  Monell, 436 U.S. at 691.  Furthermore, as an individual, Chief Bernabei cannot be liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation himself.  McBride v. Soos, 679 F.2d 1223 (7th Cir. 1982).

Plaintiff does not allege that Chief Bernabei was at the scene or interacted with Decedent.  Instead, Plaintiff argues that Chief Bernabei participated in Decedent's constitutional violation because Bernabei failed to adequately train Officer Quartucci.  Here, Plaintiff relies upon Collins v. City of Harker Heights, Tex., 503 U.S. 115 (1992).

In Collins, the Supreme Court addressed a claim brought by the widow of a city sanitation employee.  The widow argued that that the city violated her late husband's due process rights by failing to train or warn its employees about known hazards in

---

[2] If discovery reveals that Quartucci did not have final policy making authority, Defendants' additional arguments regarding municipal liability will be appropriate at the Summary Judgment stage of proceedings.

the workplace. The Court acknowledged that a plaintiff may bring a claim for inadequate training when she shows that the inadequate training amounted to "deliberate indifference." However, the Court held that "[a] fair reading of petitioner's complaint does not charge the city with a willful violation of [the decedent's] rights." Collins, 503 U.S. at 125-126. That is to say, a defendant can only be found liable for a failure to train, where its policy is the moving force behind the constitutional violation. Furthermore, a failure to train claim only survives where a policymaker has made a deliberate choice to follow a course of action from among various alternatives that resulted in a lack of training. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

In the case at bar, a fair reading of Plaintiff's complaint does not charge Chief Bernabei with a willful violation of Decedent's rights. Count V of Plaintiff's Complaint only charges Defendants with a failure to "follow approved training, education and standard operating procedure[s]." (Compl. at ¶ 47.) This does not denote a *willful* violation.³ The moving force behind the constitutional violation in this case is either

---

³ Plaintiff did not incorporate certain sections of her Complaint into Count V that contain stronger language regarding Bernabei's alleged failure to train. However, even if Plaintiff did incorporate her entire complaint into Count V a fair reading would not demonstrate willful conduct on the part of Chief Bernabei.

Quartucci's negligence or his alleged deliberate indifference, not any failure to train on the part of Chief Bernabei. And finally, this Court cannot infer from Plaintiff's complaint that he made a deliberate choice which resulted in a failure to train Quartucci.

Accordingly, Plaintiff has not stated a cause of action under § 1983 against Chief Bernabei and Count V is DISMISSED.

**B. State Law Claims**

Plaintiff's state law claims are brought under the Illinois Wrongful Death Act. 740 ILCS 180/1. Plaintiff has also filed a suit in state court under the Illinois Wrongful Death Act. Hafley v. City of Spring Valley, 2006 L 000013 D 001 (Bureau County, Ill. filed March 31, 2006). This Court has taken judicial notice of the state court record and notes that Defendants have also moved to dismiss Plaintiff's claims in state court. There, the court recently granted in part and denied in part a motion to dismiss allowing certain claims under the Illinois Wrongful Death Act to proceed. The ruling has not been published and neither party has presented this Court with a copy of the Order.

Accordingly, there is a possibility of parallel and conflicting rulings on Plaintiff's state law claims. Indeed, it is possible that this Court could issue a ruling on the pending

13

motions to dismiss that directly conflicts with the rulings recently made in state court.

Under the two pronged "exceptional circumstances test" established by the Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), a district court may dismiss or stay an action when there is an ongoing parallel action in state court.  Defendants briefly touch upon the issue of staying proceedings in their Motion, but the issue and its factors have not been fully addressed.  Due a risk of conflicting rulings, this Court will entertain briefs on a Motion to Stay to avoid the possibility of piecemeal litigation.  See La Duke v. Burlington Northern R.R Co., 879 F.2d 1556 (7th Cir. 1989); Johnson Controls, Inc. v. American Motorists Ins. Co., 719 F.Supp. 1459 (E.D. Wis. 1989).[4]  The parties should address the two prong test laid out in Colorado Water, 424 U.S. 800.

In the interim, Defendants' Motion to Dismiss Plaintiff's state law claims is MOOT.  This Court will revive Defendants' Motion to Dismiss Plaintiff's state law claims if this case

---

[4] If the parties agree that this matter should be stayed while the state case proceeds then the parties may submit a joint brief informing the court of their agreement.  Or, if Plaintiff wishes to voluntarily dismiss the state law claims allowing this case to proceed on the federal claims, Plaintiff may submit a notice of voluntary dismissal.

proceeds.  In the interim, this Court should avoid the possibility of conflicting rulings.

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. 7] is GRANTED IN PART and DENIED IN PART.  The Motion to Dismiss Counts I and III is DENIED.  Count V of Plaintiff's Complaint is DISMISSED.  Defendants' Motion to Dismiss Plaintiff's state law claims is MOOT.  The Court will revive the pending Motion and address the state law issues if this case proceeds.

Defendants are ordered to submit a brief on whether this Court should stay this case while Plaintiff's state law claims are adjudicated in state court.  Defendants' brief shall be submitted within thirty days and Plaintiff may submit a Response Brief fourteen days thereafter.  All briefs shall be limited to ten pages.

ENTERED this  24th  day of September, 2007.

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge
